Argued and submitted July 9, 2007, affirmed April 16, 2008

# FRIENDS OF BILL BRADBURY
## and Bill Bradbury
### in his capacity as Candidate and Treasurer,
*Petitioners,*

*v.*

# DEPARTMENT OF JUSTICE
## and Attorney General,
*Respondents.*

A132297

182 P3d 303

Roy Pulvers argued the cause for petitioners. With him on the briefs was Lindsay, Hart, Neil & Weigler, LLP.

James M. Brown, Special Assistant Attorney General, argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

SERCOMBE, J.

## SERCOMBE, J.

Oregon statutes require the periodic reporting of campaign contributions and expenditures by a candidate or the candidate's principal campaign committee with the government official conducting the election. The issue in this case is whether a committee properly reported expenditures by its agent for the broadcasting of political advertisements and for the agent's commissions. Petitioners Bill Bradbury and Friends of Bill Bradbury (collectively, the committee) seek review of a final order of a designee of the attorney general (the special assistant attorney general or SAAG) finding that the committee violated campaign finance reporting rules because of the way that expenditures by a public relations agent of the committee were reported. The committee asserts that its reports complied with the applicable rules and that the interpretation of those rules is controlled by a prior determination by the Elections Division in a similar case. On review for legal error, ORS 183.482(8)(a), we affirm the final order.

Petitioner Bradbury was an incumbent candidate for Secretary of State at the statewide general election in 2004. Petitioner Friends of Bill Bradbury was formed as his principal campaign committee to manage the finances of the secretary's election campaign. The committee hired Charlton Engel Marketing (CEM) as its agent to purchase advertising time from broadcasters during the 2004 campaign. CEM ordered broadcast media time from 12 separate television broadcasters. The SAAG found that it was a "standard industry practice" for a public relations agency to receive a commission of 15 percent of the gross billings to a broadcaster. The broadcasters' invoices to CEM stated the gross cost for each purchase of advertising time and discounted the charge to allow a 15 percent commission. CEM, in turn, billed the committee the total gross cost of the advertising, which the committee paid. CEM paid the broadcasters the net amounts that were due. CEM retained the difference between the payment of its invoices by the committee (the gross costs of the advertising charges) and the amount that CEM paid to the broadcasters (85 percent of the gross costs) as a commission. Therefore, for every $100 billed to CEM by a broadcaster for

advertising time, CEM was paid $100 by the committee; however, CEM paid the broadcaster only $85 and retained $15 as its commission.

The Secretary of State adopted campaign finance reporting regulations for the period in question in the form of an election manual, the *2004 Campaign Finance Manual* (the *Manual*).[1] The *Manual* requires that any expenditure by a committee or candidate be reported. Direct expenditures and loan payments by a committee are reported on the PC 3 form; indirect expenditures by a committee, made through an agent, are reported on the PC 9 form. The instructions for both forms require the listing of the payee name and the purpose and amount of each expenditure. The instructions classify expenditure types by purpose and mandate that the purpose code be entered on both forms for each expenditure.[2]

The committee reported the amounts paid to CEM on PC 3 forms, identifying the payee as Charlton Engel Marketing and the purpose as an "A (Agent)" category.[3] It

---

[1] ORS 246.110 provides that the Secretary of State is the "chief elections officer of this state, and it is the secretary's responsibility to obtain and maintain uniformity in the application, operation and interpretation of the election laws." Election campaign finance regulations are adopted by the secretary pursuant to ORS 260.156(1) (providing that "[t]he Secretary of State may adopt rules for the manner of determining and reporting expenditures and contributions"). Pursuant to that enabling legislation, OAR 165-012-0005 designated the *2004 Campaign Finance Manual* and associated forms as the "procedures and guidelines to be used for compliance with Oregon campaign finance regulations." All references to statutes and rules in this opinion are to the laws in effect at the time of the events in question.

[2] Those expenditure types include: A - Agent; B - Broadcast Advertising; C - Cash Contributions; F - Fundraising Event Expenses; G - General Operational Expenses; I - Interest Payment; L - Literature, Brochures, Printing; M - Management Services; N - Newspaper and Other Periodical Advertising; O - Other Advertising; P - Postage; R- Reimbursement for Personal Expenditures; S - Surveys and Polls; T - Travel Expenses; U - Utilities; W - Wages, Salaries, Benefits; Y - Petition Circulators; Z - Preparation and Production of Advertising.

[3] The instructions define the expenditure purpose categories of "agent," "broadcast advertising," and "management services" as:

"**A Agent:** A payee who is an individual or firm, such as an advertising agency or a public relations firm, authorized by a committee to make expenditures for broadcast or newspaper advertising or for payment of petition circulators and makes such expenditures. If an expenditure is made for the committee by an agent, file a Report of Expenditures Made by an Agent (PC 9) or submit a copy of an invoice from the agent detailing the agent's expenditures. The invoice must contain the same information required on form PC 9.

"**B Broadcast Advertising:** Expenditures for the purchase of radio and television advertising. This is a sufficient purpose only if payment is made

reported the expenditures by CEM on PC 9 forms by the payee name (different radio and television broadcasters), purpose category "B (Broadcast Advertising)" and the amount of the expenditures as the gross cost of the advertising time, without the discount for the 15 percent commission. None of the PC 9 forms reported an expenditure by CEM for any amount paid to it as management fees or identified the purpose of any expenditure as "M (Management Services)."

In February 2005, a complaint was filed with the Elections Division of the Office of the Secretary of State, alleging that the committee had not filed adequate campaign finance reports. The complaint requested an investigation of whether the committee "overstated the amounts paid to broadcast stations and underreported the commissions paid to the agent, Charlton Engel Marketing, Inc.," on the appropriate expenditure reports. Because the complaint concerned a political committee supporting the candidacy of the Secretary of State, the Elections Division referred the complaint to the Attorney General pursuant to ORS 260.345(2). Because a similar complaint had been filed against the Attorney General, he referred the complaint at issue in this case to a special assistant attorney general under ORS 260.345.

In August 2005, the SAAG issued a notice of proposed civil penalty, which alleged that the committee violated campaign finance reporting rules in its accounting of the broadcast advertising and CEM commission expenditures on the filed PC 9 forms. A contested case hearing was held before an administrative law judge, who concluded in a proposed order that the committee did not file insufficient campaign finance reporting forms. However, the SAAG reviewed the proposed order and came to the opposite conclusion in his final order: that any use of committee funds by the agent were made "on behalf of the committee" and were "expenditures." The final order concluded:

---

directly to a specific radio or TV station. If payment is made to an agent solely for preparation or production of advertising, use code Z. If payment is made to an agent for purchase of advertising, use code A.

"* * * * *

"**M Management Services:** Includes fees and commissions paid to campaign management companies and contract consultants."

(Boldface in original.)

"[T]he Manual specifies that 'Expenditures made by an agent must be itemized and reported in the same detailed manner *as if the expenditure had been made by the committee itself.*' (emphasis supplied). Charlton Engel Marketing performed services for which it received payment from the Committee. Each payment was an 'expenditure' that the Committee was required to report. Because the agent's compensation was not determined until the broadcast services were purchased, the precise amount of the expenditure to the agent for services was not available for reporting on Form PC3 by the committee. Such sums were known to the agent and should have been reported on Form PC9. Because the Forms PC9 did not report those sums and the [amounts] paid to the media outlets were overstated, the reports were not detailed and accurate and, consequently were 'insufficient.'

"The Manual states that if a committee hires an agent, the committee should inform the agent of the reporting requirements. It provides further that expenditures made by an agent must be itemized and reported in the same detailed manner as if the expenditure had been made by the committee itself. * * * [U]pon the plain meaning of the rules * * *, the Committee is responsible for complete and accurate reports of its expenditures. The Committee's report was 'insufficient' if it fails to provide details of expenditures made by an agent on behalf of the committee."

(Footnote omitted.)

The issue on appeal is whether the SAAG erroneously interpreted the relevant statutes and regulations, the applicable portions of the *Manual,* and its required forms, to require separate listings on the PC 9 forms of the amounts and purpose of the money spent for the CEM commissions and that spent for the purchases of advertising time. The SAAG specifically relied on policies that require that expenditures of an agent of a committee be reported in the same detail "as if the expenditure had been made by the committee itself." Petitioners argue that the committee's filings met both the letter and purpose of the *Manual* because it "accurately reported what it spent and what it was billed, exactly as it was billed, and in doing so reported the entire cost to

[the Secretary of State] to obtain media spots that were purchased by a marketing company for the campaign." Petitioners argue that there is no rule that required it to report the agency's commission "that the marketing company received from the media outlet." Furthermore, petitioners argue that deference should have been given to an earlier Elections Division decision not to proceed on a different complaint, in which it concluded that there was no rule requirement to report a commission that a marketing agency received from a media outlet.

■ The SAAG responds that the requirements of the *Manual* are clear: committees are required to completely and accurately report contributions and expenditures and, when a committee employs an agent, the agent's expenditures must be reported with the same detail and accuracy as if those expenditures had been made by the committee itself. The SAAG argues that, because the PC 9 forms reported the entire sums from the committee as paid to the broadcasters and did not report the compensation retained by CEM, the committee's report was not complete and accurate, violating the requirements of the *Manual*. The SAAG also contends that the prior informal determination made within the Secretary of State's office on similar facts is distinguishable and that the Attorney General is not bound by it as a matter of the Attorney General's statutory authority in cases of this type.

We agree with the SAAG and with the rationale of the order under review. The relevant statutes and the implementing rules in the *Manual* require the reporting of all expenditures by describing the payee and the amount and purpose of the expenditure. Those same policies broadly define "expenditure" to include the retention of money for a commission. Under those statutes and rules, for the most part, the specificity of that reporting obligation is the same whether the expenditure is a direct payment of money by a candidate or committee or the payment of money through an agent of the committee. The committee's failure to report the money retained by CEM as commissions and the amount actually paid to the broadcasters on the PC 9 forms is a violation of the applicable statutes and rules.

As relevant here, *former* ORS 260.068 (2003), *repealed by* Or Laws 2005, chapter 809, section 56, requires the filing of two pre-election statements and one post-election statement of "contributions received and expenditures made by or on behalf of the candidate or the candidate's principal campaign committee" by the committee with the Secretary of State, the official conducting the 2004 statewide general election. ORS 260.083 (2003), *amended by* Or Laws 2005, chapter 809, section 8, details the content of the statements of contributions and expenditures. ORS 260.083(1)(b) (2003) specifies that the reports must list "[u]nder expenditures, all expenditures made, showing the name of the payee and the amount and purpose of each." "Expenditure" is defined by *former* ORS 260.005(6) (2003), *renumbered as* ORS 260.005(7) (2005):

> "Except as provided in ORS 260.007, 'expend' or 'expenditure' includes the payment or furnishing of money or anything of value or the incurring or repayment of indebtedness or obligation by or on behalf of a candidate, political committee or person in consideration for any services, supplies, equipment or other thing of value performed or furnished for any reason * * *."

The *Manual* contains instructions for the reporting of "expenditures" and defines the term to include:

> "Payment or furnishing of money or furnishing of any other thing of value;

> "Incurring or repayment of indebtedness or obligation by or on behalf of a candidate, committee or person in consideration for any services, supplies or equipment;

> "Any other thing of value performed or furnished for any reason, including support of or opposition to a candidate, committee or measure[.]"

*Manual* at 33.

The SAAG applied the *Manual* definition of "expenditure" and concluded that both the payments for media advertising and for services by an agent were "expenditures." We agree. Under that *Manual* provision and *former* ORS 260.005(6), CEM's retention of money paid by the committee as a commission or in payment for its services in arranging

broadcast advertising was an "expenditure" because it was "the payment or furnishing of money * * * by or on behalf of a * * * political committee * * * in consideration for any services * * * performed or furnished for any reason."[4] The committee nonetheless contends that its payment of campaign funds to CEM as an agent is the equivalent of CEM's use of the funds to purchase political advertising time, including the standard commission, and should be reported on the PC 3 and PC 9 forms in the same way—as a single expenditure. In other words, it claims that the use of the funds by CEM was for a single purpose and should be regarded as a single expenditure under the applicable regulations of campaign finance reporting. The committee argues that the SAAG erred in concluding that further detail was required on the PC 9 forms.

It is, however, plain that ORS 260.083(1)(b) (2003) and the *Manual* require that the committee report "all expenditures," including the retention of campaign funds by CEM as a commission, by "showing the name of the payee and the amount and purpose of each" expenditure. The committee's argument appears to be that it properly reported the payments to CEM on the PC 3 forms and that the committee is not obligated to report CEM's expenditures with any detail or differently on the PC 9 forms. We disagree. The SAAG correctly concluded that the statutes and rules require the same detail of report (by payee, amount, and purpose) whether made directly by a committee or indirectly by an agent.

---

[4] There is a lack of factual basis for the committee's argument that the CEM commission "was received from the broadcasters by CEM, as is the industry practice." The SAAG adopted the following finding in his final order that was based on a stipulation of the parties:

"14. The broadcast media invoices to Charlton Engel state the gross rate for each media buy, the amount of a 15% 'discount'/'commission' and the amount due to be paid by Charlton Engel to the broadcaster (which is the net amount of the gross rate less 15 percent). Charlton Engel pays by check to the broadcast media the balance stated as due. * * *"

The SAAG also found that the committee paid CEM the gross charges by the broadcasters. Thus, there was no payment to CEM by any broadcaster. Whatever the industry custom on the *amount* of an agency commission, the CEM commissions in this case were paid by the committee to CEM and were not "received from the broadcasters by CEM."

ORS 260.083(5) (2003) requires the same reporting of expenditures by an agent of a campaign committee (with two exceptions) as that required for reporting of expenditures by the committee. It provides:

"Except as provided in subsection (8), expenditures made by an agent of the candidate or political committee on behalf of the candidate or committee shall be reported in the same manner as if the expenditures had been made by the candidate or political committee."

The *Manual* reiterates that each expenditure of a committee must be listed individually and its purpose described, and that expenditures made "by an agent of a committee on behalf of the committee must be itemized and reported in the same detailed manner as if the expenditure had been made by the committee itself." *Manual* at 33. An agent is "an individual or firm, such as an advertising agency or a public relations company, authorized by a committee to make expenditures for broadcast or newspaper advertising or for payment of petition circulators and makes such expenditures." *Manual* at 83. CEM is an "agent" under this definition. The *Manual* further provides:

"If a committee hires an agent, the committee should inform the agent of the reporting requirements. The agent should be given the dates of the accounting periods for the reports and be asked to provide a detailed invoice of expenditures for each of those time periods.

"Expenditures made by an agent must be itemized and reported in the same detailed manner as if the expenditure had been made by the committee itself. In addition to reporting the expenditure or in-kind contribution, the committee must file a Report of Expenditures Made by an Agent (PC 9) or submit a copy of an invoice from the agent detailing the agent's expenditures.

"The committee is responsible for obtaining from the agent all the appropriate information for reporting the expenditures. The committee may either provide a copy of the detailed invoice or a form PC 9 with the appropriate report. If providing a detailed invoice, the invoice must at least contain the information required on form PC 9, including date, payee name, amount and purpose for each expenditure

made by the agent. The invoice must also reference the specific form, page and line numbers of the payments to the agent as required on form PC 9."

*Id.* The *Manual* provides that the amounts reported on the form PC 9 "must total the payment made to the agent." *Id.* at 47.

ORS 260.083(8) (2003) and the implementing manual allow an agent to avoid reporting the detail of each expenditure on a PC 9 form only in two circumstances. As an exception to the requirement in ORS 260.083(5) (2003) that agent expenditures be "reported in the same manner as if the expenditures had been made by the candidate or political committee," ORS 260.083(8)(a) (2003) provides:

"A vendor who enters into a contract with a candidate or political committee to prepare or produce brochures, mailings, polls, other opinion research or television, radio or newspaper advertising, or to provide mail handling and postage, shall not be considered an agent of the candidate or political committee for purposes of subsection (5) of this section. The Secretary of State by rule may designate other specific products or services that would qualify a vendor for an exemption from reporting under this subsection."

Consistently with ORS 260.083(8) (2003), the *Manual* provides:

"There are two exceptions to the requirement for reporting agent expenditures in detail: costs related to the preparation and production of campaign materials and payments made by an agent to individual petition circulators.

"* * * * *

"The first exception is for costs incurred by an agent to prepare or produce brochures, mailings, polls or public opinion research, or radio, television or newspaper advertising, or to provide mail handling and postage for those materials. These expenses are not considered 'expenditures by an agent' and are not required to be itemized on form PC 9. Instead, the committee should report the total amount paid to the agent for preparation or production of broadcast, newspaper or other periodical advertising on form PC 3

with purpose code Z. Expenditures for preparation and production of other campaign materials should be reported using other appropriate purpose codes.

"However, if the agent, in addition to the preparation and production costs described above, purchases radio or television time or newspaper space for the committee, these purchases must be detailed on form PC 9. In this case, the expenditure to the agent reported on form PC 3 using purpose code A and the committee should attach a form PC 9. The preparation and production costs should be reported on form PC 9 as an expenditure to the agent with purpose code Z. All other expenditures made by the agent for advertising purchases must be itemized on form PC 9."

*Manual* at 83-84.

Thus, the only exceptions to the requirement to report itemized expenditures by an agent—for the agent's own production of campaign materials and for mail handling—do not apply here. Confirming that intent, the *Manual* then provides an illustration of the need to separately list expenditures for an agent's management fees and services and those for political advertisements on the PC 9 form. The *Manual* sets out the following example:

"A campaign manager hires a public relations firm to produce and buy radio advertising for the committee. The committee pays the public relations firm a total of $5,000. The committee must show the expenditure to the agent on form PC 3 (using purpose code A) and use form PC 9 or provide an invoice detailing how the public relations firm spent the $5,000. This includes how much of the $5,000 was used to purchase the radio advertising (purpose code B), prepare and produce the advertising (purpose code Z), *or to pay the firm's fees or charges (purpose code M)*."

*Id.* at 84 (emphasis added).

That example is the precise circumstance in this case—the required separate reporting of a public relations firm's expenditures on advertising time and its commission on the PC 9 form. In the example, the *Manual* advises that the agent must separately report how much of the committee

payment "was used to purchase the radio advertising (purpose code B), prepare and produce the advertising (purpose code Z), or to pay the firm's fees or charges (purpose code M)." Similarly, CEM must separately report on the PC 9 forms how much of the committee's payment was used to purchase advertising (purpose code B) or to pay its own fees and commissions (purpose code M).

We conclude, then, that the SAAG's decision and rationale are consistent with the plain language of the governing statutes and the *Manual* provisions. Those laws require the committee, in the first instance, to report its expenditures by payee and purpose on the PC 3 form. If money is paid to an agent for the agent's campaign purchases, the purpose of the expenditure (*i.e.*, the payment of money to the agent) can be reported generically on the PC 3 form by coding the expenditure "A" for "Agent." *Manual*, PC 3 form instructions. One reason for distinguishing the purpose of an "agent" expenditure from the purpose of payments to other vendors (who may or may not be agents themselves) is to require further accounting of the use of campaign funds by the agent. An "agent" is defined as someone who is "authorized to make expenditures" for a committee. *Manual* at 83. When the agent, in turn, makes an expenditure, *i.e.*, pays or furnishes money on behalf of a candidate or committee, that expenditure must be reported on the PC 9 form "in the same manner as if the expenditures had been made by the candidate or political committee." ORS 260.083(5) (2003).[5] When CEM paid campaign funds to broadcasters and paid itself a commission, just as if the committee had purchased time directly from the broadcasters and paid CEM a consulting fee, the committee should have described those CEM expenditures on the PC 9 form by payee, amount, and purpose. Each payment to a broadcaster should have been reported as purpose code "B" for "Broadcast Advertising."

---

[5] As an alternative to filing a PC 9 form, the *Manual* allows submission of the agent's invoice that details the agent's expenditures. The invoice must "contain the information required on form PC 9, including date, payee name, amount and purpose for each expenditure made by the agent." *Id.* at 83. Thus, the reporting obligations for a PC 9 report and a submitted agent's invoice are the same. The committee's argument that it could have made a less detailed report by invoice is not correct.

The retention of funds by CEM should have been reported by amount and purpose, arguably the code "M" for "Management Services."[6] *Manual*, PC 9 form instructions.

■     ORS 260.232(1)(b) authorizes the secretary to impose a civil penalty for a committee's failure to include on an expenditure statement the "information required under ORS * * * 260.083 * * *." ORS 260.083(5) (2003) requires the full reporting by the committee of CEM expenditures for advertising time and its own commissions on the PC 9 form. That reporting was not made. Thus, the SAAG, acting on behalf of the secretary, was within his authority in imposing the civil penalty.

The committee suggests that this plain result should be avoided because of deference owed to a prior decision of the Elections Division of the Office of the Secretary of State that interpreted the applicable *Manual* rules to the contrary. In early 2005, the Elections Division dismissed a complaint about the reporting of CEM commissions for a media buy from Comcast Corporation on behalf of the Democratic Party of Oregon (DPO). A compliance specialist with the division determined by letter that "the DPO is not required to report the commission paid by Comcast on their election reports." The committee urges that the SAAG erred in not deferring to that interpretation of the *Manual* in the subject case, relying on *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 881 P2d 119 (1994). In that case, the Supreme Court held:

> "Where, as here, the agency's plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously.' It follows that, in circumstances like those presented here, this court cannot overrule, under ORS 183.482(8)(a), an agency's interpretation of its own rule."

*Id.* at 142 (footnote omitted).

---

[6] The PC 9 instructions define "management services" as "includ[ing] fees and commissions paid to * * * contract consultants." The category presumably includes campaign funds retained by a contract consultant.

*Don't Waste Oregon* is not instructive for a number of reasons. First, the Elections Division's interpretation of the *Manual* is unclear. The letter states that the commission was "paid by Comcast." The obligation to report a payment to an agent by a third party is quite different under the applicable rules than the obligation to report a payment to an agent by a political candidate or committee. The division's opinion on the former question is not material to resolving the reporting issue before the court here.

Second, assuming that the compliance specialist interpreted the campaign financing reporting rules to excuse the reporting of the payment of the CEM commissions with campaign funds, that interpretation is simply not plausible and is entitled to no deference. As we have held, the requirement to list the purpose, amount, and recipient of an expenditure made by an agent on behalf of a committee is plain. The PC 9 filings did not disclose the amount of expenditures made for campaign services by CEM. The SAAG was correct in determining that those filings were insufficient.

■ Finally, the principal policies that are applied here are *statutory*. The administrative rules in question merely reiterate the text of the relevant statutes: the definition of "expenditure" in *former* ORS 260.005(6); the reporting obligation of an agent under ORS 260.083(5) (2003); and the exceptions to that reporting obligation by ORS 260.083(8) (2003). The deference owed to an agency's interpretation of a statute depends on whether the legislature delegated specific authority to the agency to flesh out the statutory term. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980) (agency interpretation of delegative terms in legislation). The statutory policies here are not delegative terms.

Affirmed.